IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JACARA THOMPSON, individually and as next friend of J.T., a minor,<br><br>Plaintiff,<br><br>vs.<br><br>TODD SCHMADERER, in his individual and official capacities, et al.,<br><br>Defendants. | 8:23-CV-0245<br><br>MEMORANDUM AND ORDER |

The plaintiff, Jacara Thompson, sued the defendants—several police officers for the Omaha, Nebraska Police Department; the City of Omaha; and Children's Hospital and Medical Center, Inc. ("Children's Hospital")—based on alleged violations of her constitutional and statutory rights following the hospitalization of her infant son. *See generally* filing 38. This matter is before the Court on Children Hospital's motion to dismiss the claims against it. Filing 48. The motion will be granted.

I. STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* While the Court must accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the

pleadings in favor of the non-moving party, *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

## II. BACKGROUND

### *Initial Hospital Visit*

The plaintiff, a black woman, brought her infant son, J.T., to a doctor on June 9, 2021. J.T. was six months old and severely underweight, despite the plaintiff nursing him and bottle-feeding him on a regular basis. Filing 38 at 3. At the June 9 appointment, the doctor diagnosed J.T. as being malnourished and instructed the plaintiff to take her son to Children's Hospital.

While waiting for a room at the hospital, the plaintiff nursed J.T. multiple times, in front of the hospital's staff. The staff "began to imply" that the plaintiff was neglecting and abusing her child, and they accused her of being "fidgety." Filing 38 at 3. The plaintiff provided additional breastmilk as requested by hospital staff, and she continued to nurse at two-hour intervals. Filing 38 at 3. J.T. would remain at the hospital until June 25.

The plaintiff alleges that hospital staff reported her to Child Protective Services on June 11. Filing 38 at 4, 6. CPS visited with the plaintiff and investigated her, J.T., and her other minor children, but ultimately found no probable cause nor evidence of abuse or neglect. Filing 38 at 4. Despite the CPS finding, the plaintiff alleges she continued to be harassed and scrutinized by staff at Children's Hospital.

2

Hospital staff repeatedly told the plaintiff to "go home" and said that she was "hindering" her child's care, and they asked accusatory questions about the plaintiff's other children and her treatment of J.T. *See* filing 38 at 3-5. The plaintiff did not violate any hospital rules, nor was she hindering her son's care. She declined to leave the hospital because she did not want to leave her son alone. Filing 38 at 5.

The plaintiff also requested to be transferred to a different hospital because she felt Children's Hospital could not to accurately diagnose J.T. or identify the cause of his malnutrition. She was told she could not transfer her son to a different hospital. Filing 38 at 5. The plaintiff alleges that Children's Hospital staff falsely "told other area hospitals that [the plaintiff] was causing problems." Filing 38 at 5. Other hospitals denied her transfer requests, and Children's Hospital staff told the plaintiff that her son "would be taken from her by law enforcement or CPS if she tried to take" J.T. to a different provider. Filing 38 at 5.

*Plaintiff's Arrest on June 13*

The plaintiff and her adult daughter had guest key cards to get into Children's Hospital. On June 13, the plaintiff's daughter tried to enter the hospital but the card did not work. The daughter called the plaintiff, who came down to the entrance to let her in. However, the plaintiff's key card also stopped working. A security guard told the plaintiff that the hospital was on lockdown. The plaintiff spoke with several different staff members, emphasizing that she needed to be with her infant son, to no avail.

After an hour and a half, the plaintiff decided to call the police to be let into the building. After a brief conversation with the officers, the plaintiff was allowed back in J.T.'s room. J.T. was "unstable and weak." Filing 38 at 7. At

3

the hospital staff's direction, the plaintiff started to breastfeed J.T. The officers left.

At that point, the plaintiff alleges that hospital staff contacted Omaha police. According to the plaintiff, the hospital staff lied to law enforcement and said that the plaintiff was impeding critical medical care for J.T. Filing 38 at 7. When law enforcement arrived, hospital staff again lied about the plaintiff, saying she was interfering with J.T.'s care. Officers then "cornered" the plaintiff while she was holding J.T. Filing 38 at 8. They told her to "put down the baby" and leave the hospital. *Id.* The plaintiff refused, and the officers grabbed the infant from his mother's arms. Filing 38 at 9. The officers then arrested the plaintiff and left J.T. in the physical custody and care of Children's Hospital. *See* filing 38 at 9, 10.

The plaintiff was released on bond later that day, after being held for five hours under charges for obstruction and caretaker neglect. Filing 38 at 10. The plaintiff called Children's Hospital for an update about J.T. Children's Hospital told her that J.T. was not there. This was not true. Filing 38 at 10. The hospital did not contact the plaintiff until June 15 with an update on her son.

Eventually, J.T. was diagnosed with a rare medical condition that inhibited his ability to swallow, which caused his malnutrition. On February 22, 2022, the charges against the plaintiff were dropped. The plaintiff alleges the defendants' treatment of her was because she is a poor black woman.

### III. DISCUSSION

The plaintiff asserts two claims against Children's Hospital: unreasonable search and seizure, and violation of equal protection. *See* filing 38 at 13-14. The plaintiff alleges that the hospital became a state actor for

4

purposes of § 1983 when it retained custody of J.T. after the plaintiff's arrest. Filing 38 at 13. The plaintiff also asserts her rights under § 1981 were violated. Children's Hospital argues it is not a state actor for purposes of those statutes, and that the plaintiff has failed to allege the existence of a contract under § 1981.

*State Actor*

To state a claim under § 1983, a plaintiff must allege sufficient facts to show, (1) the defendant acted under color of state law, and (2) the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right. *E.g., Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022). Only state actors can be held liable under § 1983 because the Constitution only protects individuals from state action. *See id.*; *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001). *See generally Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 619 (1991) ("Racial discrimination, though invidious in all contexts, violates the Constitution only when it may be attributed to state action."); *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (the Constitution "affords no shield" against private conduct, "no matter how unfair that conduct may be").

The Eighth Circuit has recognized some instances where private entities can be considered state actors. These generally include some affirmative act by the state to either condone the private entity's behavior, or to delegate some authority that traditionally belongs to the state. *See Wickersham v. City of Columbia,* 481 F.3d 591, 597 (8th Cir. 2007). A state acting jointly with a private entity, or where the private entity is "pervasively intwined" with the state, may also make the private party a state actor. But a private entity that calls the police or gives false information to a police officer does not constitute

5

joint activity with state officials. *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009); *Youngblood*, 266 F.3d at 855.

The plaintiff alleges that Children's Hospital "was a state actor as a result of holding J.T. after [the plaintiff's] arrest." Filing 38 at 13. She argues that Children's Hospital "injected itself" into her relationship with J.T., and deprived her the ability to care for her child, which is an action only the state can take, usually only after a court determines a parent is unfit. *See* filing 49 at 5. The plaintiff asserts that Children's Hospital invoked the assistance of law enforcement as "muscle" to get the plaintiff "out of the way" so that it could make decisions about J.T.'s well-being. Filing 49 at 5.

However, the misuse of police and the unlawful interference in a parent-child relationship does not make a private entity a state actor. Children's Hospital acted without permission from or delegation by the state; the plaintiff alleges neither "joint activity" nor "pervasive entwinement." *See Wickersham*, 481 F.3d at 597. Children's Hospital was not a "state actor" for purposes of § 1983 when it lied about the plaintiff or called the police.

The plaintiff alleged that once police arrived and arrested her, Children's Hospital "had physical custody and care over J.T." Filing 38 at 10. Ordinarily, if a custodial parent of a minor child is arrested, the county's juvenile court would determine custodial arrangements. *See* Neb. Rev. Stat. § 43-247; *In re Interest of Mainor T.*, 674 N.W.2d 442, 449 (Neb. 2004). The plaintiff, however, has not alleged what steps the county took (or did not take) to delegate Children's Hospital as the *legal* custodian of J.T., such that the hospital was acting under the color of state law when it allegedly denied the plaintiff the ability to see her son. *See* filing 38 at 10.

The plaintiff has not sufficiently alleged that Children's Hospital acted in concert with the state actors such that Children's Hospital could be itself

considered a state actor. Children's Hospital's motion to dismiss the § 1983 claims against it is granted.

### Section 1981

Section 1981 prohibits racial discrimination in all phases and incidents of a contractual relationship, though it does not provide a general cause of action for race discrimination. *See Gregory v. Dillard's, Inc.*, 565 F.3d 464, 468 (8th Cir. 2009) (en banc). Children's Hospital argues that the plaintiff has failed to identify a contractual relationship subject to the statute. The plaintiff did not respond to Children's Hospital's arguments. *See generally* filing 49. The plaintiff appears to have abandoned her claim under § 1981, *see* NECivR 39.2(c), and therefore this claim will be dismissed.

### IV. CONCLUSION

The plaintiff's complaint fails to state a claim under either §§ 1983 or 1981 as to Children's Hospital. Children's Hospital was not acting in concert with, nor with the authority of, the state, and so cannot be liable for violating the plaintiff's *constitutional* rights. *See Edmonson,* 500 U.S. at 620.

That doesn't mean that the facts alleged don't state *any* claim against Children's Hospital. In these circumstances, an injured party does not *need* § 1983 to sue a private entity—traditional common law or statutory tort remedies are available.[1] *Cf. Manuel v. City of Joliet,* 580 U.S. 357, 370 (2017) (tort principles provide the starting point for conditions of recovery under §

---

[1] Jurisdictional issues may arise where a plaintiff presents claims against both state actors and private parties from whom the plaintiff is not diverse, but those issues can be overcome if the claims form part of the same case or controversy. 28 U.S.C. § 1367; *see also Murray v. Wal-Mart, Inc.*, 874 F.2d 555, 558 (8th Cir. 1989).

1983). However, the plaintiff has not, at this point, presented any legal theories, in tort or otherwise, under which Children's Hospital could be liable for the alleged injuries. *See generally* filing 49. For these reasons,

IT IS ORDERED:

1. Children's Hospital's motion to dismiss (filing 48) is granted.

2. Children's Hospital and Medical Center, Inc. is terminated as a party.

Dated this 2nd day of September, 2025.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

8